## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: FLUIDMASTER, INC., WATER CONNECTOR COMPONENTS PRODUCTS LIABILITY LITIGATION | ) MDL No. 2575<br>) 14-cv-10250, 14-cv-05696<br>) Judge Robert M. Dow, Jr.<br>) Magistrate Judge Jeffrey T. Gilbert |

This Document Relates to the Following Pending Actions:

*Rensel, et al., v. Fluidmaster, Inc.*, No. 14-cv-000648 (C.D. Cal.);

*Sullivan, et al., v. Fluidmaster, Inc.*, No. 1:14-cv-05696 (N.D. Ill.);

*Hardwick v. Fluidmaster, Inc.*, No. 1:14-cv-00363 (D.N.H.);

*Hungerman, et al. v. Fluidmaster, Inc.*, No. 2:14-cv-00994 (W.D. Pa.);

*Wyble v. Fluidmaster, Inc.*, No. 14-cv-01826 (D. Ariz.);

*Larson v. Fluidmaster, Inc.*, No. 1:14-cv-10222-JWD (N.D. Ill.); and

*American Select Ins. Co., et al. v. Fluidmaster, Inc.*, No. 15-cv-00073-JVS-JCG (C.D. Cal.).

### ORDER

Plaintiffs Steven Rensel and Brian Kirsch's Motion to Vacate the November 12, 2014 Order Entered in the Central District of California Prior to Transfer to this Court [ECF No. 3, Case No. 14-10250] is granted. This order replaces the Court's order entered on May 6, 2015 on Plaintiffs' Motion to Vacate [ECF No. 16, Case No. 14-10250]. The Court thanks the parties for their letter comments on the draft order circulated on May 6, 2015 [ECF No. 17, Case No. 14-10250]. Those comments will be docketed separately as the Court took them into account in preparing this revised order. No party identified any confidential information in the Court's draft order. See Statement below for further details.

## STATEMENT

Presently before the Court is Plaintiff Steven Rensel and Brian Kirsch's Motion to Vacate an Order entered in the Central District of California about a month before this case was transferred to the Northern District of Illinois as part of MDL No. 2575. [ECF No. 1, Case No. 14-10250]. On November 12, 2014, the District Judge then presiding over this case in the California entered an Order striking the class action allegations in Plaintiffs' amended complaint as a sanction for their counsel having proceeded, over Fluidmaster's objection, with so-called destructive testing of the coupling nuts that are an integral part of the Fluidmaster product Plaintiffs allege is inherently defective in this case. Fluidmaster's product instructions state that the coupling nuts are to be tightened only by hand. Fluidmaster contends that Plaintiffs' coupling nuts failed because tools were used to tighten those nuts when they were originally installed or later, not because of any inherent product defect.

In his November 12, 2014 Order, the District Judge in California ruled on, among other things, Fluidmaster's Motion Objecting to Plaintiffs' Destructive Testing of Evidence Submitted in Support of Plaintiffs' Motion for Class Certification and Motion to Strike/Exclude Said Evidence [ECF No 4-19, Case No. 14-10250]. The thrust of Fluidmaster's argument in California was that its ability to defend itself in this case was or may have been seriously impaired by Plaintiffs' "destructive testing" of Plaintiffs' coupling nuts, real evidence in this case. *See, e.g.,* Fluidmaster's Reply filed in support of its Motion to Strike/Exclude Evidence in California [ECF No. 4-28, Case No. 14-10250, at 11] ("Plaintiffs purposely spoliated key evidence in this litigation [and] Fluidmaster has been irretrievably prejudiced"). Plaintiffs denied that Fluidmaster had been so prejudiced.[1]

---

[1] The term "destructive testing" can be a factual statement but in the context of the present dispute it also has almost an outcome determinative connotation. The Court, therefore, uses the term "destructive testing" in quotations in this Order to avoid taking a conclusive position on that issue at this juncture.

2

Fluidmaster argued that Plaintiffs' experts altered the appearance of the coupling nuts by cutting material off of them and covering them in gold sputter during their testing of the nuts. *Id. at 3-5. See also* Fluidmaster's Motion Objecting to Plaintiffs' Destructive Testing Evidence Submitted in Support of Plaintiffs' Motion for Class Certification and Motion to Strike/Exclude Said Evidence [ECF No 4-19, Case No. 14-10250] at 5. When Plaintiffs filed their Opposition to Fluidmaster's Motion in California [ECF No. 4-13, No. 14-10250], they argued that Fluidmaster's experts had inspected the coupling nuts <u>before</u> Plaintiffs' experts tested them so any prejudice to Fluidmaster from later "destructive testing" by Plaintiffs' experts was minimal or nonexistent. But Plaintiffs did not yet have Fluidmaster's experts' reports nor had they deposed those experts when they filed their Opposition brief. Rather, it was only after Plaintiffs filed their Opposition brief that Fluidmaster produced reports prepared by its experts, Steven Meek and Dr. Vijay Gupta, and those experts testified in their depositions they had thoroughly inspected and photographed Plaintiffs' coupling nuts and identified tool marks consistent with the nuts having been tightened with tools rather than by hand. The experts' reports and their subsequent deposition testimony arguably supported completely Fluidmaster's defense in this case that misuse of the product rather than any inherent product defect led to Plaintiffs' injuries.

Plaintiffs did not have an unconstrained opportunity to argue before the District Judge in California that Fluidmaster's own experts' reports and testimony seriously undercut its contention that it had been "irretrievably prejudiced" by Plaintiffs' "destructive testing" of the coupling nuts. Although Plaintiffs did argue that Fluidmaster's experts inspected Plaintiffs' coupling nuts before Plaintiffs' experts did their "destructive testing" of those same nuts, Plaintiffs did not have the results of Fluidmaster's experts' inspections or their depositions when they filed their Opposition to Fluidmaster's Motion to Strike/Exlcude Evidence. As a result, Plaintiffs' ability to argue

3

against Fluidmaster's severe prejudice argument was limited. For example, when they submitted their Opposition brief, Plaintiffs did not have the high definition photographs taken by Fluidmaster's experts which those experts testified showed tool markings on the coupling nuts, the expert reports that chronicled the experts' detailed inspection of the nuts, or those experts' opinions as articulated in their deposition testimony.

In this Court's view, the District Judge's assessment of Plaintiffs' "destructive testing" of the coupling nuts and the consequences of that conduct on Fluidmaster's ability to defend itself in this case, including its argument that it had been "irretrievably prejudiced" by Plaintiffs' testing, may have been impacted by arguments that Plaintiffs were not in a position to make when they filed their Opposition to Fluidmaster's Motion to Strike/Exclude Evidence. Accordingly, the prudent course is to allow the District Judge sitting in this transferee District to consider all the facts and hear all the arguments relevant to the impact of Plaintiffs' testing of Fluidmaster's product on Fluidmaster's ability to defend itself and then decide whether Plaintiffs' claims should proceed as a class action in view of all the relevant evidence and arguments based on that evidence.

Plaintiffs represent that their counsel intended to apprise the District Judge in California of the important developments that occurred after they filed their Opposition brief during oral argument on Defendant's Motion to Strike/Exclude scheduled for October 27, 2014. But the District Judge struck that hearing and, instead, ruled on Defendant's Motion to Strike/Exclude based solely on the papers that had been submitted. As noted, however, those papers did not include a fulsome or complete explanation of the extent to which Fluidmaster's experts had been able to inspect Plaintiffs' coupling nuts and provide detailed testimony to support Fluidmaster's key defense that the nuts had been tightened by tools rather than by hand.

The Court recognizes that Fluidmaster included with its Reply brief in support of its Motion in California the report submitted by one of its experts, Steven Meek, just days earlier. Fluidmaster referenced that report in the context of its argument that the raised "ribs" on the coupling nuts were key pieces of evidence and that identifying tool marks on those ribs was extremely important to Fluidmaster's defense. [ECF No. 4-28, Case No. 14-10250, at 3-4]. Fluidmaster argued that Plaintiffs' "destructive testing" of the nuts previously inspected by Mr. Meek could prejudice Fluidmaster – "[b]ecause Plaintiffs may have removed ribs with tool marks, Fluidmaster's ability to present evidence on one of its key defenses has been severely compromised." *Id. at 4*. Fluidmaster referenced portions of Mr. Meek's report in which he described what he had done and observed during his inspection of the coupling nuts.

That Fluidmaster included Mr. Meek's report with its Reply brief does not change this Court's view of the matter. Plaintiffs still did not have an opportunity to present to the District Judge their argument that Fluidmaster's experts' disclosed opinions and testimony undercut Fluidmaster's argument that it had been severely prejudiced by Plaintiffs' "destructive testing" of the coupling nuts. The fact that Mr. Meek's report was included in the mountain of paper that was submitted to the District Judge in California, and was cited for a limited purpose by Fluidmaster in its Reply brief, does not change the fact that Plaintiffs were not able to advocate their position about the significance of the statements made and opinions delivered by Mr. Meek and Dr. Gupta in their reports and later depositions (which deposition transcripts were not, to the best of this Court's knowledge, in the record before the District Judge).

Although Plaintiffs did argue in their Opposition brief that Fluidmaster's experts inspected the coupling nuts when they were in pristine condition in June 2014, so that Plaintiffs' experts' subsequent "destructive testing" of the coupling nuts could not have prejudiced

Fluidmaster's ability to defend itself in this case, that argument might have been advanced materially if Plaintiffs had been able to point to evidence in the Meeks and Gupta reports and depositions to support it. Just because the District Judge in California had Mr. Meek's report in the voluminous record before him when he ruled on Fluidmaster's Motion to Strike/Exclude Evidence does not mean he would not have benefited, perhaps materially, from Plaintiffs' arguments about the significance of that report and Mr. Meek's later deposition testimony had those arguments been made in the course of the adversary process.

The timeline is straightforward:

> September 29, 2104: Fluidmaster files its Motion Objecting to Plaintiffs' Destructive Testing Evidence Submitted in Support of Plaintiffs' Motion for Class Certification and Motion to Strike/Exclude Said Evidence. [ECF No 4-19, Case No. 14-10250].
>
> October 6, 2014: Plaintiffs' file their Opposition to Fluidmaster's Objection to Plaintiffs' Destructive Testing Evidence Submitted in Support of Plaintiffs' Motion for Class Certification and Motion to Strike/Exclude Said Evidence. [ECF No 4-13, Case No. 14-10250].
>
> October 8, 2014: Fluidmaster's expert, Scott Meek, is deposed by Plaintiffs' counsel about his report dated October 6, 2014. Plaintiffs represent, without opposition by Fluidmaster, that Mr. Meek's report was not produced to them until after they filed their Opposition to Fluidmaster's Motion to Strike/Exclude. [ECF No. 7, Case No. 14-10250, at 11].
>
> Prior to the start of Mr. Meek's deposition, Plaintiffs also say Fluidmaster turned over to Plaintiffs for the first time documents, including high definition photos, from his June 24, 2014, inspection of Plaintiffs' coupling nuts, including photos that Mr. Meek testified showed tool marks on those nuts. *Id.* In his report, Mr. Meek discussed in detail the tool contact marks he says he saw on the Rensel and Kirsch coupling nuts, and his report includes at least six high definition photographs of the marks he says were on the coupling nuts. The Meek expert report and deposition have been designated as Confidential in this case so the Court will not quote from them. [ECF No 8-1, 8-4, Case No. 14-10250]. This Court has reviewed those documents, however, and there is no question that Mr. Meek's report and his deposition testimony address subjects that are at the heart of

6

Fluidmaster's defense in this case. [ECF No. 7, Case No. 14-10250, at 11-15].

October 9, 2014: Fluidmaster's expert, Dr. Vijay Gupta, is deposed by Plaintiff's counsel about his rebuttal report. Dr. Gupta's report also is dated October 6, 2014, and Plaintiffs represent, without dispute by Fluidmaster, they received that report after they filed their Opposition brief. [ECF No 8-5, Case No. 14-10250]. Dr. Gupta also testified that he saw what Mr. Meek reported seeing on the coupling nuts through Mr. Meek's microscope. [ECF No. 7, Case No. 14-10250, at 14-15; ECF No. 8-6, Case No. 14-10250].

October 10, 2014: Fluidmaster files its Reply in support of its Motion to Strike/Exclude Evidence. [ECF No 4-28, Case No. 14-10250]. In that brief, Fluidmaster argues that Plaintiffs' "destructive testing" of the coupling nuts "irreversibly prejudiced" its ability to defend itself. [*Id.* at 11]. No further briefs were filed or scheduled to be filed on Fluidmaster's Motion to Strike/Exclude Evidence.

October 27, 2014: Fluidmaster's Motion to Strike/Exclude Evidence was set for hearing in California on this date. The hearing was stricken, however, and the District Judge in California issued his order striking Plaintiffs' class action allegations on November 12, 2014. Shortly thereafter, the case was transferred to the Northern District of Illinois for coordinated pretrial proceedings with other similar cases filed against Fluidmaster.

Fluidmaster argues that whether or not Plaintiffs' testing of the coupling nuts actually impaired its ability to defend itself in this case is irrelevant because the District Judge in California did not base his ruling on whether spoliation of evidence had occurred. Rather, he based his ruling on his conclusion that Plaintiffs' counsel improperly proceeded with "destructive testing" of the coupling nuts in Massachusetts in the face of Fluidmaster's objection that such testing should take place in California without obtaining a court order to allow the testing to proceed in Plaintiffs' chosen venue. Therefore, according to Fluidmaster, since it is undisputed that Plaintiffs proceeded with their testing of the product in Massachusetts over its objection, and that is the lynchpin of the District Judge's decision in California, this Court should not disturb the ruling in the transferor District that such conduct was deserving of

strong sanction.

This Court disagrees. The California District Judge's view of Plaintiffs' counsel's conduct clearly was colored by Fluidmaster's argument that Plaintiffs' testing of the coupling nuts severely impaired the company's ability to defend itself. He said as much in his order: "Plaintiffs presumably purposefully impaired Defendant's ability to discover information critical to its defense." *Rensel v. Fluidmaster, Inc.*, 2014 WL 6466853*3 (C.D. Cal. Nov. 12, 2014). This was one of the bases for his conclusion that Plaintiffs' so-called destructive testing of the Fluidmaster coupling nuts deserved the strong sanction of striking Plaintiffs' class action allegations.

The effect of Plaintiffs' testing of the coupling nuts on Fluidmaster's ability to mount a defense clearly was a subject that was much on the mind of the District Judge in California. He did not reach that issue, however, "because," he said, "the overall impact of the testing on Defendant's case is not precisely known. . . ." *Id.* He expanded on his understanding that Plaintiffs "irreparably prejudiced" Fluidmaster's ability to defend itself, *id. at *1*, in a footnote:

> "Defendant contends that Plaintiffs' testing severely limits its ability to inspect the ferrule on both of the coupling nuts because the ferrules were clamped in a vice without pads which may have distorted or obscured tool marks. Tool marks that it suspects would have revealed that tools were used contrary to product's installation instructions. **Defendant contends this crucial evidence is lost and irretrievable**."

*Id. at *4 (emphasis added).*

Fluidmaster is correct that the District Judge in California did not find conclusively or rest his decision on objectively determinable spoliation of evidence. But he also clearly was under the impression that while "the overall impact of the testing on Defendant's case is not precisely

8

known," *id. at 3,* "crucial evidence is lost and irretrievable," *id. at 4.* Would the District Judge have reached that same conclusion if Plaintiffs had been able to make the arguments they now make before this Court, that the reports and testimony of Fluidmaster's own experts – who inspected Plaintiffs' coupling nuts (under a microscope), saw with their own eyes evidence of tool marks on both Plaintiffs' nuts, photographed the tool marks with high definition cameras and opined that the marks showed that the nuts had been tightened with tools rather than by hand – belied Fluidmaster's claims of irretrievable prejudice? Would he have reached the same conclusion if he had been informed that Defendant's expert, Mr. Meek, had provided expert testimony based upon his inspection of Plaintiffs' unaltered coupling nuts that arguably supported completely Fluidmaster's defense? [ECF No. 7, Case No. 14-10250, at 11-15; ECF No. No 8-1, 8-4, 8-5, 8-6, Case No. 14-10250].

We do not know whether the transferor District Judge would have reached the same conclusion if he had been presented with these arguments, all of which are based on things that occurred or were revealed after Plaintiffs filed their Opposition to Defendant's Motion to Strike/Exclude. Plaintiffs, obviously, could have tried to put these facts before the District Judge in California before the scheduled hearing on Fluidmaster's Motion. This Court, however, is not inclined to hold against Plaintiffs' counsel their decision not to burden the District Judge in California with a motion to file a sur-reply brief – on top of the voluminous briefs that already had been submitted – after Fluidmaster's expert reports were produced to Plaintiffs and their experts were deposed so as to put these facts of record before the scheduled hearing. Plaintiffs' counsel could not have known that the District Judge would decide to strike the scheduled hearing on Defendant's Motion and, instead, rule on the papers that had been submitted to him. Nor is this Court inclined to hold against Plaintiffs' counsel the fact they did not move to reconsider the District Judge's decision of November 12, 2014, on the eve of a

9

decision on transfer by the Panel on Multi-District Litigation.

Rather than guess whether new information would have affected the transferor District Judge's ultimate conclusion concerning whether Plaintiffs' counsel's conduct deserved the strong sanction of striking Plaintiffs' class action allegations, the Court believes that the more prudent course is to allow the District Judge in this transferee district to decide whether Plaintiffs' claims should proceed as a class action based on consideration of all the relevant evidence including, among other things, the impact of Plaintiffs' testing of the coupling nuts on Fluidmaster's ability to defend itself. To be clear, the Court understands that Fluidmaster is arguing that its ability to defend itself has been prejudiced by Plaintiffs' so-called destructive testing of the coupling nuts even though its experts had an opportunity to inspect the nuts before Plaintiffs' experts did so because Plaintiffs' experts' "destructive testing" may have prevented Fluidmaster from conducting additional tests on Plaintiffs' coupling nuts that could further aid its defense. And, of course, neither side will have available for the jury the coupling nuts as they existed before the "destructive testing." Still, in the Court's view, a decision concerning both sides' arguments in this regard should be made on a full record that permits each side to put its best foot forward before a decision is made on the merits.

An additional point bears mentioning, although it is a smaller point. The District Judge in California viewed Plaintiffs' decision to subject the actual coupling nuts in question to "destructive testing" against his assumption that "[p]resumably there were other coupling nuts available to test." *Id. at \*3*. In that context, the District Judge said "[t]here is no reason that Plaintiffs could not have supported their Motion for Class Certification with testing results from off the shelf connectors and coupling nuts." *Id.* The District Judge's discussion of this

point appears immediately before his conclusion that "Plaintiffs' testing was done in bad faith." *Id.*

But Plaintiffs argue in support of their Motion to Vacate, again without opposition by Fluidmaster, that Fluidmaster stopped making and selling these particular coupling nuts in 2010 and Fluidmaster informed Plaintiffs' counsel that it did not have any of these nuts in its inventory or in inventory maintained by its distributors when this lawsuit was filed. So, to the extent an assumed but incorrect fact about the availability of other coupling nuts for testing weighed heavily or even materially in the California District Judge's decision that Plaintiffs' counsel's conduct deserved a harsh, potentially case dispositive sanction, that is an additional reason to vacate that decision and allow a decision to be made on the consequences that should flow from Plaintiffs' testing of Fluidmaster's product on a more fully-developed factual record in the context of Plaintiffs' motion for class certification and other pretrial rulings that will be made in this case post-transfer.

Accordingly, for all of these reasons, Plaintiffs' Motion to Vacate is granted. It is so ordered.

Dated: May 21, 2015

Jeffrey T. Gilbert
United States Magistrate Judge